**Opinion issued April 21, 2026.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00651-CV

———————————

**HUMPHRIES CONSTRUCTION CORPORATION, Appellant**

**V.**

**HIGHLAND VILLAGE LIMITED PARTNERSHIP, HIGHLAND VILLAGE GP LLC, HIGHLAND VILLAGE HOLDING LLC, AND TRANS AMERICAN HOLDING CORP. A/K/A TRANS AMERICAN HOLDINGS CORP. N/K/A TRANS AMERICAN HOLDINGS LLC, Appellees**

**And**

**HIGHLAND VILLAGE LIMITED PARTNERSHIP, HIGHLAND VILLAGE GP LLC, HIGHLAND VILLAGE HOLDING LLC, AND TRANS AMERICAN HOLDING CORP. A/K/A TRANS AMERICAN HOLDINGS CORP. N/K/A TRANS AMERICAN HOLDINGS LLC, Cross-Appellants**

**V.**

**HUMPHRIES CONSTRUCTION CORPORATION, Cross-Appellee**

**On Appeal from the 157th District Court**

---

**OPINION ON REHEARING**

Appellees/Cross-Appellants Highland Village Limited Partnership, Highland Village GP LLC, Highland Village Holding LLC, and Trans American Holding Corp. a/k/a Trans American Holdings Corp. n/k/a Trans American Holdings LLC filed a motion for rehearing of our August 28, 2025 opinion. We deny the motion for rehearing, withdraw our opinion and judgment of August 28, 2025, and issue this opinion and judgment in their stead. Our disposition remains the same.[1]

This interlocutory appeal involves arbitration issues stemming from a construction contract dispute between Appellant/Cross-Appellee Humphries Construction Corporation and Appellees/Cross-Appellants.[2]

Appellant filed a demand for arbitration pursuant to the construction contract. Seven months later, Appellant filed a related lawsuit in state district court through which it acquired financial records from a third-party financial institution that it later used in the pending arbitration proceeding. Highland Village Limited Partnership

---

[1]    Appellees/Cross-Appellants also filed a motion for en banc reconsideration. Because we issue a new opinion, the motion for en banc reconsideration is moot. *In re Wagner*, 560 S.W.3d 311, 312 (Tex. App.—Houston [1st Dist.] 2018, orig. proceeding) ("Because we issue a new opinion in connection with the denial of rehearing, the motion for en banc reconsideration is rendered moot.").

[2]    *See* TEX. R. APP. P. 25.1(d) and TEX. CIV. PRAC. & REM. CODE § 171.098(a)(2).

filed pleas in abatement and motions for protection in the arbitration proceeding and in the district court, arguing that Appellant had waived its right to arbitration by its judicial conduct in the civil suit. Although the arbitration panel denied Highland Village Limited Partnership's plea and motion for protection, the trial court subsequently found that Appellant had waived its right to arbitration. The trial court granted Highland Village Limited Partnership's plea and abated the arbitration proceeding. The trial court also denied Appellees' motion for sanctions, which Appellees premised on Appellant's alleged discovery abuses stemming from its wrongful acquisition and use of Appellees' financial records.

On appeal, Appellant argues the trial court erred in granting Highland Village Limited Partnership's plea in abatement[3] because (1) the arbitration panel found Appellant had not waived its right to arbitration and, pursuant to the construction contract, the panel had the exclusive power to decide issues of arbitrability, (2) Appellant's litigation conduct was expressly permitted by the non-waiver-by-litigation provisions set forth in American Arbitration Association Rules 38(c), 39(h), and 55(a), which the parties incorporated by reference into the construction

---

[3] Highland Village Limited Partnership filed the initial plea in abatement and motion for protection, and Highland Village Limited Partnership and its general partner Highland Village GP LLC filed supplemental pleas in abatement. We refer to the initial plea and the supplemental pleas as the pleas from Highland Village Limited Partnership and Highland Village GP LLC, and we refer to both entities as Highland Village Limited Partnership unless otherwise noted.

contract, (3) Appellant's litigation conduct falls within the "safe harbor" defined in *Perry Homes v. Cull*, 258 S.W.3d 580 (Tex. 2008), and (4) the trial court erred in applying the totality of the circumstances test.

Appellees filed a cross-appeal and conditional petition for writ of mandamus challenging the trial court's denial of Highland Village Limited Partnership's motion for protection, Highland Village Limited Partnership's motion to quash, and Appellees' motion for sanctions against Appellant. Appellees argue the trial court erred in refusing to quash the third-party subpoena Appellant used to obtain Appellees' financial records and enter a protective order because Appellant's subpoena did not comply with Section 59.006 of the Texas Finance Code and the Texas Rules of Civil Procedure. According to Appellees, the confidential financial records Appellant wrongfully obtained using the subpoena are irrelevant to the civil lawsuit and allowing Appellant to possess and use the records violated Appellees' rights to privacy. Appellees also argue the trial court erred in denying their motion for sanctions.

We hold the trial court erred in holding that Appellant waived its right to arbitration by substantially invoking the judicial process. We thus reverse the trial court's order granting Highland Village Limited Partnership's plea in abatement. We construe Appellees' cross-appeal as a petition for writ of mandamus and deny Appellees' request for mandamus relief as it concerns the trial court's denial of

4

Highland Village Limited Partnership's motion for protection and Appellees' motion for sanctions against Appellant.

**Background**

On January 27, 2021, Appellee Highland Village Limited Partnership ("HVLP"), as the owner, and Appellant Humphries Construction Corporation ("HCC"), as the general contractor, executed a construction contract for the construction of the Highland Village End Cap in Houston, Texas ("Project"). The contract consists of (1) the AIA Document A102, Standard Form of Agreement Between Owner and Contractor ("Agreement") and (2) AIA Document A201-2007, General Conditions of the Contract for Construction" ("General Conditions"). We refer to the Agreement and the General Conditions collectively as the Construction Contract.

Article 15.3 of the Agreement designates Haidar Barbouti as HVLP's Project Representative. Barbouti is the President of HVLP, the President of HVLP's general partner Appellee Highland Village GP, LLC ("HVGP"), and President of Appellee Trans American Holding Corp. a/k/a Trans American Holdings Corp. n/k/a Trans American Holdings LLC ("Trans American"). Appellee Highland Village Holding LLC f/k/a Highland Village Holding Inc. ("HVH") is a wholly-owned subsidiary of Trans American, and HVH owns a 100% interest in HVGP and a 99% interest in HVLP. Neither HVH nor Trans American is a signatory to the Construction

5

Contract. Where appropriate, HVLP, HVGP, HVH, and Trans American are collectively referred to as "Appellees."

## A. The Construction Contract

### 1. Arbitration Agreement

Article 13.2 of the Agreement, captioned "Binding Dispute Resolution," states:

> For any Claim subject to, but not resolved by mediation pursuant to Section 15.3 of AIA Document A20l-2007, the method of binding dispute resolution shall be as follows: Arbitration pursuant to Section 15.4 of AIA Document A201 2007.[4]

The term "Claim" is broadly defined by Section 15.1.1 of the General Conditions as follows:

> A Claim is a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract. The term 'Claim' also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract. The responsibility to substantiate Claims shall rest with the party making the Claim.

Pursuant to Section 15.4.4.2 of the General Conditions, a third party cannot be joined as a party to an arbitration proceeding unless the third party gives express written consent to be added as a party to the proceeding.

---

[4] The parties' mediation efforts were not successful.

Exhibit E to the Agreement provides that any claims under the Construction Contract are governed by the American Arbitration Association's current Construction Industry Arbitration Rules ("Arbitration Rules"). Exhibit E states:

> If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with current Construction Industry Arbitration Rules.

The Arbitration Rules are incorporated into the arbitration agreement pursuant to Arbitration Rule 1(a), which states:

> The parties shall be deemed to have made these Rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Construction Industry Arbitration Rules or whenever they have provided for arbitration of a construction dispute pursuant to the Rules of the AAA without designating particular AAA Rules.

Am. Arbitration Ass'n, Constr. Indus. Arbitration Rules and Mediation Procedures, R-1(a) (2024), https://www.adr.org/media/a2qi10ij/construction_rules.pdf (last accessed Aug. 25, 2025). The Arbitration Rules also include three rules which HCC characterizes as non-waiver-by-litigation provisions: Arbitration Rules 38(c), 39(h), and 55(a). Arbitration Rule 38(c), "Interim Measures," states:

> A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

*Id.* at R-38(c). Arbitration Rule 39(h), "Emergency Measures of Protection," states:

7

A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with this rule, the agreement to arbitrate or a waiver of the right to arbitrate. . .

Arbitration Rule 55(a) states:

No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate . . .

*Id.* at R-55(a).

## 2. HVLP's Financial Obligations

Article 2.2.1 of the General Conditions requires HVLP to provide written confirmation to HCC that HVLP was able to meet HVLP's financial obligations to HCC under the Construction Contract. Article 2.2.1 states:

Prior to commencement of the Work, the Owner shall provide written confirmation to the Contractor that the Owner has made financial arrangements to fulfill the Owner's financial obligations under the Contract.

On February 2, 2021, Morgan Stanley issued a letter to HCC that states:

Please be advised that Trans American Holding Corp., for which Haidar Barbouti is the authorized person maintains the following brokerage account at Morgan Stanley Smith Barney LLC ("Morgan Stanley") which contain(s) assets, including cash and marketable securities, valued, as of the close of business on February 1, 2021, in excess of $11,000,000.00.

According to Barbouti, the funds deposited in Trans American's Morgan Stanley account were provided by Trans American's wholly-owned subsidiary HVH.

8

**B.    Arbitration Proceeding**

By June 2022, HCC's and HVLP's contractual relationship had deteriorated, and each side claimed the other was in default under the Construction Contract. According to HCC, HVLP violated the Construction Contract by, among other things, failing to make payments to HCC for work completed, and HVLP claimed HCC violated the Construction Contract by failing to substantially complete work on the Project within the time limit set forth in the contract.

On June 24, 2022, HCC filed with the AAA a demand for arbitration against HVLP and HVLP's general partner, HVGP. In its demand for arbitration, HCC described the "nature of the dispute" as:

> Contractor is unpaid for several pay applications, has been forced to terminate contract and is seeking recovery of amounts owed pursuant to the contract, foreclosure of attached Aff of Mech Lien, plus prompt payment interest, attorneys fees pursuant to the contract. . .

On June 27, 2022, HCC filed an affidavit and mechanic's and materialman's lien against the Project in the amount of $3,149,546.00, naming HVLP and HVGP as the Project's owners.  On December 16, 2022, Barbouti filed for personal bankruptcy.

During a status call on January 6, 2023, the arbitrators informed the parties that the arbitration hearing was scheduled for the week of September 18, 2023.  HCC stated that because the arbitration hearing was scheduled to commence more than a year after it filed its original mechanic's and materialman's lien on June 27, 2022,

HCC would be filing what it characterized as a "placeholder" suit to toll limitations and preserve its right to foreclose its lien, subject to the arbitration.

## C.     HCC's Civil Suit

On January 9, 2023, HCC filed an amended affidavit and mechanic's lien against the Project and against Appellees as the Project's owners for the unpaid claim in the amended amount of $1,706,682.12.[5]  HCC also filed an original petition in district court against Appellees asserting a claim against all four defendants for foreclosure of its mechanic's lien.  In the alternative, HCC argued that the court should "disregard [Appellees'] corporate forms and impose liability against them on a joint and several basis[] under principles of Texas alter ego law," hold Trans American and HVLP "liable as joint venturers, partners, or under principles of agency," and "secure payment for [HCC's] work on this Project."  Also in the alternative, HCC requested equitable relief in the form of a constructive trust preventing Appellees "from moving any funds in excess of $3,000,000.00 from Trans America's brokerage account."

In its original petition, HCC stated that the Construction Contract required it to arbitrate its disputes with HVLP, that HCC had initiated an arbitration proceeding in compliance with the Construction Contract, and that HCC would "pursue the

---

[5]     The reduced amount reflects partial payments HVLP made to contractors after the arbitration proceeding commenced.

Arbitration to collect the contract balance believed to be owed in at least the sum of $3,149,546.00, subject to further modification." HCC further stated:

> Since Texas law is unclear as to whether the filing of an arbitration suspends deadlines for filing suit to foreclose a mechanic's lien, Plaintiff, out of an abundance of caution, is filing this placeholder lawsuit to foreclose its Lien, subject to the Arbitration, without waiver of any of Plaintiff's claims, rights or remedies arising out of or related to the Prime Construction Contract, Lien, Arbitration or law.

In the petition's prayer, HCC requests:

> Upon conclusion of the Arbitration, should Plaintiff make a recovery, a Final Judgment foreclosing Plaintiff's Lien against Defendants' real property described in Exhibits 1 & 2 for the amount of the Arbitration award recovered, along with its reasonable and necessary attorney's fees, including, without limitation, appellate attorney's fees, expert witness fees, Arbitration and court costs incurred in obtaining such relief.

On January 12, 2023, HCC's counsel sent an email to eight of Barbouti's attorneys notifying them that HCC had filed suit on January 9, 2023, providing them with a copy of HCC's original petition, and requesting that Barbouti freeze $3,000,000 pending the outcome of the arbitration. HCC requested a response from Barbouti by January 20, 2023, and stated that HCC would seek injunctive relief if Barbouti did not respond by the deadline. Barbouti did not respond to HCC's request.

On January 26, 2023, HCC filed its first amended original petition and request for injunctive relief against Appellees in district court adding a new claim for temporary and permanent injunctive relief. HCC asked the court to enjoin Appellees

11

from "making any transfers, payments, distributions or take any other action that would reduce the Morgan Stanley account [identified in the February 2, 2021 letter to HCC] below the sum of the Three Million Dollars ($3,000,000.00), pending the result of the Arbitration." HCC also stated that it would "pursue the Arbitration to collect the contract balance believed to be owed in at least the sum of $1,706,682.12, subject to further modification." HCC set the temporary injunction hearing for 1:30 p.m. on February 10, 2023.

**D.  Morgan Stanley Subpoena**

On January 27, 2023, HCC issued a witness subpoena with a subpoena duces tecum to Morgan Stanley's records custodian. The subpoena required Morgan Stanley to appear at the February 10, 2023 temporary injunction hearing "to testify as a witness" and to produce at that time the following documents:

1.  All statements regarding any brokerage account statements issued to Trans American Holding Corp. a/k/a Trans American Holdings Corp. n/k/a Trans American Holding LLC from and after February 2, 2021 up to the current date referenced in [Morgan Stanley's] February 2, 2021 letter to Humphries Construction Corporation attached as Exhibit "A."

2.  All statements regarding any brokerage accounts in addition to those provided in response to No. 1 above "for which Haidar Barbouti is the authorized person" from February 2, 2021 up to the current date, including, without limitation, those of Haidar Barbouti, individually, Highland Village Limited Partnership, Highland Village GP LLC, Highland Village Holding LLC, [and] Highland Village Holding, Inc . . . .

12

3. To the extent that the brokerage accounts in No. 1 and 2 above currently have less than $3,000,000.00 in them, copies of all withdrawals from those accounts since February 2, 2021.

On the morning of February 10, 2023, Morgan Stanley, in lieu of appearing at the temporary injunction hearing, delivered to HCC 1,012 pages of account statements for brokerage accounts belonging to HVLP, HVH, and Trans American.[6] The records reflected that of the more than $11,000,000 in assets Trans American's brokerage account held on February 1, 2021, only $46.07 remained. HCC passed the temporary injunction hearing because, according to HCC, "it would be pointless to freeze such a paltry sum."

On February 10, 2023, HVLP filed its original answer in the trial court and asserted counterclaims against HCC for breach of contract, fraudulent lien, and attorney's fees. HVLP asked the court to award costs and reasonable attorney's fees as sanctions against HCC for "filing frivolous pleadings under Texas Civil Practice and Remedies Code Chapter 10 and for filing pleadings that are groundless and brought in bad faith under Texas Rule of Civil Procedure 13."

### E. HVLP's Pleas in Abatement and Motions for Protection

On February 10, 2023, HVLP filed a "Plea in Abatement and Motion for Protection" in the arbitration proceeding and also in the civil suit. HVLP argued that HCC had "waived its right to arbitration by seeking affirmative relief and discovery

---

[6] Morgan Stanley did not have any accounts belonging to HVGP.

in this District Court while the arbitration proceeding it filed ha[d] been pending for over a half year" and asked the court to stay the arbitration proceeding. According to HVLP, HCC had asserted the same claims for foreclosure of a lien in the arbitration proceeding and the civil litigation, and HCC could have asserted its claims for alter ego, joint venture, and constructive trust against Appellees in the arbitration proceeding rather than filing such claims in the trial court. HVLP argued that HCC was seeking "a constructive trust over funds that clearly ha[d] no relationship to the causes of action asserted herein, and Plaintiff cannot establish the elements required for such relief as a matter of law." HVLP further argued:

> To the extent that Plaintiff seeks discovery from Defendants, Morgan Stanley, or any third party, Defendant prays that the Court not grant Plaintiff such relief or to allow such discovery until a ruling is made on abating the arbitration proceeding. Defendant prays for protection in this regard. Plaintiff prays that any and all discovery sought from Defendants, Morgan Stanley, or any third party be quashed and that Defendant be granted protection in this regard until the further order of this Court.

At 1:32 p.m. on February 10, 2023, HCC's counsel emailed counsel for HVLP, HVGP, and HVH informing them that he had just seen HVLP's plea in abatement and that he had cancelled the hearing on the temporary injunction. HCC's counsel also asked HVLP, HVGP, and HVH's counsel how much money was left in the Trans American account stating, "Please consider this email as a discovery request for how much is in that account. I would prefer to work something out without the Court's intervention, but only your client controls that issue." He further

14

stated, "I'm available to discuss safeguarding the money that is supposed to be in the Morgan Stanley account per 2.2.1 of the GC's for the purpose of paying HCC for its work on your client's project, or a reasonable proposal regarding safeguarding those funds so they are maintained until the end of the arbitration."

HVLP initially set its plea in abatement and motion for protection for hearing in the district court on March 24, 2023, but it later reset the hearing several times, ultimately filing a third amended notice setting the hearing for May 19, 2023. While HVLP's plea in abatement and motion for protection remained pending in the trial court, HCC filed on February 15, 2023, its "Second Supplemental Statement of Claims" in the arbitration proceeding in which it asserted a breach of contract claim against HVLP based on the depletion of Trans American's Morgan Stanley brokerage account.[7] According to HCC, HVLP was required by the Construction Contract to "provide written confirmation to the Contractor that the Owner ha[d] made financial arrangements to fulfill the Owner's financial obligations under the Contract" and on February 2, 2021, HVLP's Project Representative Barbouti directed Morgan Stanley to send a letter to HCC "confirming that Trans American had over $11 million in liquid assets to fund the Project and that Mr. Barbouti was the 'authorized person' on the account." HCC argued that, based on the "relationship

---

[7] Under the scheduling order in the arbitration proceeding, February 15, 2023 was the deadline for each party to provide a detailed statement of its claims, counterclaims, and defenses.

15

of trust" between HCC and HVPL, HCC "trusted that the $11 +million Morgan Stanley brokerage account would serve as the construction account for the $11.7 million Project." HCC argued that it learned on February 10, 2023 that "Barbouti [had] secretly drained tens of millions from the account in March, 2022," leaving only $46.07 in the construction account as of December 31, 2022, and thus "placing HCC's right to be paid in jeopardy." HCC attached an excerpt from the December 2022 Account Summary for Trans American's brokerage account provided by Morgan Stanley.

On February 20, 2023, HCC filed its "Rule 38 Motion to Compel Deposit of Missing Funds" in the arbitration proceeding, arguing that because Barbouti had depleted the funds in Trans American's brokerage account that were to have been used to pay HCC for its work under the Construction Contract, HVLP, its general partner HVGP, and Barbouti "should now be required to conserve at least $3 million that should have been left in the construction account, by depositing at least that amount into a suitable escrow account, subject only to the control of the Arbitration Panel." HCC attached a copy of the same excerpt from the December 2022 account summary for Trans American's brokerage account it had attached to its supplemental statement of claims. HCC argued that the arbitration panel was empowered to grant it such equitable relief based on Arbitration Rule 38, which states: "The arbitrator may take whatever interim measures he or she deems necessary, including injunctive

16

relief and measures for the protection or conservation of property and disposition of perishable goods." Am. Arbitration Ass'n, Constr. Indus. Arbitration Rules and Mediation Procedures, R-38(a). HCC stated, "If this Honorable Panel does not believe the preceding provides it with the authority to demand such action from the defaulting Respondents and Mr. Barbouti, HCC will pursue the same relief in the state court action."

On or about February 20, 2023, HCC filed its objections and response to HVLP's plea in abatement and motion for protection in the arbitration proceeding. In its response, HCC argued that the plea should be denied because (1) HVLP had failed to meet its "heavy burden" to justify a finding of waiver, and (2) "the Texas Supreme Court and the Fifth Circuit clearly hold that the question of whether a party has waived the right to arbitration through litigation conduct is a question of law reserved for the state court to decide in the first instance, not the arbitrators." HCC further stated, "While it appears there has been a recent trend in the law to allow arbitrators, rather than courts, to decide 'gateway issues,' such as the enforceability or validity of arbitration clauses, the issue of whether a party has allegedly waived the benefit of an arbitration clause through 'litigation conduct' remains a question of law to be decided by the courts."

On February 27, 2023, the arbitration panel issued orders denying HCC's Rule 38 Motion and denying "in its entirety" HVLP's plea in abatement and motion for protection.

On March 10, 2023, HCC filed in the trial court its original answer to HVLP's counterclaims in which HCC argued that all of HVLP's counterclaims were subject to the arbitration agreement. HCC moved the court to compel HVLP to arbitrate the counterclaims in the pending arbitration proceeding and to stay the trial court's proceedings with respect to the counterclaims.

The same day, HCC filed a response to HVLP's plea in abatement and motion for protection in the trial court, along with HCC's plea in abatement and motion to compel arbitration of HVLP's claims. HCC reiterated that HVLP's counterclaims were subject to the parties' arbitration agreement and thus "HVLP should be compelled to arbitrate its purported claims made against HCC and all litigation concerning those claims should be stayed immediately." According to HCC, HVLP had attempted to "circumvent the Arbitration by filing its Plea in Abatement, which HVLP, without explanation, also filed with this Court," and "the Arbitration Panel swiftly rejected HVLP's attempt to block the Arbitration by denying HVLP's Plea in Abatement." HCC argued "HVLP should not be allowed to evade the Arbitration by asserting claims in this Court that are clearly within the scope of the arbitration clause at issue."

Relying on Arbitration Rules 38 and 55, HCC argued that its "filing of a lawsuit seeking injunctive relief and requesting limited discovery to support that request [did] not constitute sufficient litigation conduct to justify a finding of waiver." HCC further argued that it had not engaged in any litigation conduct justifying a finding of waiver because it merely filed a lawsuit seeking injunctive relief and subpoenaed only three categories of documents from Morgan Stanley, which Morgan Stanley produced without filing an objection in the trial court.

HCC disputed HVLP's claim that HCC could have asserted its alter ego claims against Appellees in the arbitration proceeding because HVH and Trans American, who are not subject to the arbitration agreement, could not be joined as parties to the arbitration without their written consent. HCC also argued that its constructive trust claim was "directly relevant to HCC's breach of contract claims, as it now appears that HVLP materially breached the [Construction] Contract when Mr. Barbouti drained the account, without notifying HCC, in violation of the contractual duties owed to HCC and in violation of the relationship of trust and confidence that existed between HCC and HVLP."

With respect to HVLP's motion for protection, HCC argued that HVLP waived any right to seek protection because HVLP's motion was filed after Morgan Stanley produced the requested documents and thus, the motion was moot at the time it was served.

On April 17, 2023, HVLP filed in the trial court a reply to HCC's response and a first supplement to its plea in abatement and motion for protection. In its supplemental plea, HVLP argued that HCC waived its right to arbitration by (1) filing the civil suit seven months after it initiated arbitration proceedings, (2) asserting claims for affirmative relief against third-party Trans American, even though HCC could have added Trans American to the arbitration proceeding, (3) conducting discovery in a civil lawsuit, (4) subpoenaing records from third-party Morgan Stanley without notice to HVLP and HVGP, and (5) using the records provided by Morgan Stanley in the arbitration to HVLP's detriment. HVLP argued it was prejudiced by HCC's filing of the civil lawsuit because HCC obtained discovery from Morgan Stanley in the civil lawsuit that HCC "might never have obtained in the Arbitration and which HCC believes supports its claims in Arbitration," and HVLP had been recently advised by the AAA that the parties are required to deposit another $117,702.5 as "anticipated compensation and expenses." According to HVLP, "HCC's actions in filing the lawsuit amount[ed] to [HVLP] fighting a two-front war at substantial expense, subject to HCC moving at its whim to shut down the Lawsuit by invoking the arbitration contract as a shield to the Lawsuit."

On April 28, 2023, HCC sent a letter to the arbitration panel, asking the panel to "protect its jurisdiction and HCC's valuable contract right in arbitrating this

dispute . . . and enjoin [HVLP] from taking any further action in the state court placeholder suit until after this Panel issues its Award in accordance with the parties' arbitration agreement." HCC argued that HVLP "should be ordered to dismiss their state court counterclaim, withdraw their Supplemental Plea in Abatement and Motion for Protection and pass the May 19, 2023 hearing, and sign an abatement motion and order to abate the state court placeholder case until after this Panel issues its Award." HCC also asked the panel to order HVLP "to dismiss their Counterclaim filed in the state court placeholder action, withdraw their Supplemental Plea in Abatement and Motion for Protection and pass their May 19, 2023 hearing, and sign an abatement motion and order to abate the state court placeholder case until after the Panel has issued its Award in this proceeding."

On May 3, 2023, HCC filed in the trial court its first amended plea in abatement and/or motion to compel arbitration of HVLP's claims.

On May 17, 2023, the arbitration panel denied HCC's request for Rule 38 order and the relief HCC requested in its April 28, 2023 letter, stating:

> The Panel considered HCC's Request for Rule 38 Order and the various responses and replies filed by both Claimant and Respondents. While the Panel appreciates the holding in [*TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694 (Tex. 2023)] cited by Claimant, that decision does not confer the authority to the Panel to grant the relief requested by Claimant.

On May 19, 2023, Appellees filed a motion for sanctions against HCC based on HCC's use of the civil lawsuit to obtain their financial records from Morgan

21

Stanley, which they argued HCC had secured without notice to Appellees and in violation of Finance Code Section 59.006 and the Texas Rules of Civil Procedure. Appellees argued that HCC's failure to "provide notice on all parties" prevented them from "filing a motion for protective order and/or to quash the subpoena (which would surely have been granted)." Among the sanctions requested, Appellees requested that the civil suit be abated and HCC be prohibited from

> us[ing] the discovery wrongfully obtained by Morgan Stanley for any purpose, and that Plaintiff make demand on all relevant third-parties to whom the documents were disseminated to that third party to immediately return and/or destroy those documents, and that all documents wrongfully obtained be "clawed-back"

The hearing on HVLP's plea in abatement and motion for protection, which had been rescheduled several times, was held later the same day, on May 19, 2023. After hearing the parties' arguments, the trial court took the plea in abatement and motion for protection under advisement and issued its "Order to Stay and Abate," prohibiting the parties from engaging in any litigation prior to the scheduled June 9, 2023 hearing on Appellees' sanctions motion. The parties were expressly prohibited from engaging in any discovery, filing additional lawsuits, and further disclosing any information contained in the financial records provided by Morgan Stanley to HCC on February 10, 2023. The hearing on Appellees' motion for sanctions against HCC took place over four days on June 9, 12, 18, and 19, 2023. At the end of the

22

last day of testimony, the trial court took under advisement HVLP's plea in abatement and motion for protection and Appellees' motion for sanctions.

## F. Trial Court's Rulings

On August 15, 2023, the trial court signed an "Order on Defendants' Motion for Sanctions, Motion to Abate Arbitration, and Motion for Protection" granting HVLP's plea in abatement and concluding HCC had waived its right to arbitration. The trial court abated the arbitration proceeding but denied Appellees' other requested relief.

On August 25, 2023, HCC filed a motion for reconsideration of the trial court's order and HVLP filed its response on August 30, 2023, asking the court to issue a confidentiality agreement to protect the documents produced by Morgan Stanley. On September 5, 2023, the trial court issued an order denying HCC's motion for reconsideration and stating:

> The parties have agreed to and the Court hereby stays the lawsuit until such time as the Court of Appeals enters an order in connection with Plaintiff s interlocutory appeal of the Court's August 15, 2023 Order.

> The Court further orders that the parties shall not use the financial records from Morgan Stanley for any purpose during the time period for which the lawsuit is stayed in accordance with this Order.

HCC and Appellees filed timely notices of appeal.

## Law on Arbitration[8]

The Federal Arbitration Act ("FAA") generally governs arbitration provisions in contracts that involve interstate commerce. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). Under the FAA, state law governs the question whether a litigant agreed to arbitrate, and federal law governs the scope of the arbitration

---

[8] In their motion for rehearing, Appellees/Cross-Appellants argue that the United States Supreme Court's opinion in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) rejected special, arbitration preferring rules grounded in the Federal Arbitration Act's policy favoring arbitration and thus "there is no presumption against waiver under the FAA, and doubts are not resolved in favor of arbitration." Neither the Texas Supreme Court nor this Court have addressed whether *Morgan* abrogates what Appellees call "arbitration preferring rules." *See Wagner v. Apache Corp.*, 627 S.W.3d 277, 284 (Tex. 2021) (noting strong presumption in favor of arbitration and stating doubts regarding arbitration agreement's scope are resolved in favor of arbitration) (citing *Rachal v. Reitz*, 403 S.W.3d 840, 850 (Tex. 2013), *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011) and *Perry Homes v. Cull*, 258 S.W.3d 580, 585 n.4 (Tex. 2008)); *Brooks v. Kirkendall Dwyer, LLP*, No. 01-23-00624-CV, 2025 WL 2248568, at *3 (Tex. App.—Houston [1st Dist.] Aug. 7, 2025, pet. denied) (mem. op.) (same); *Met Int'l Trading Co., Inc. v. 49North LLC*, No. 01-24-00756-CV, 2025 WL 2413079, at *6 (Tex. App.—Houston [1st Dist.] Aug. 21, 2025, no pet.) (mem. op.) (noting strong presumption in favor of arbitration); *Jetall Cos., Inc. v. Sonder USA Inc.*, No. 01-21-00378-CV, 2022 WL 17684340, at *12 (Tex. App.—Houston [1st Dist.] Dec. 15, 2022, no pet.) (mem. op.) (same); *Mac Haik Chevrolet, Ltd. v. Parker*, No. 01-22-00685-CV, 2023 WL 1786163, at *5 (Tex. App.—Houston [1st Dist.] Feb. 7, 2023, no pet.) (mem. op.) (noting strong presumption against waiver). *Cf. Hollingsworth v. Swales*, 717 S.W.3d 655, 659 (Tex. App.—Waco 2025, pet. denied) (noting strong presumption in favor of arbitration and stating doubts regarding arbitration agreement's scope are resolved in favor of arbitration); *Fid. Auto Group, LLC v. Hargroder*, 689 S.W.3d 1, 14 (Tex. App.—Beaumont 2024, no pet.) (noting strong presumption against waiver of arbitration); *Fastrac Energy Servs., LLC v. Gomez*, No. 13-24-00114-CV, 2026 WL 315645, at *3 (Tex. App.—Corpus Christi–Edinburg Feb. 5, 2026, no pet. h.) (mem. op.) (noting strong presumption in favor of arbitration). We need not resolve whether these rules apply post-*Morgan*, however, because even if not applicable, we would hold that HVLP did not establish that HCC substantially invoked the judicial process resulting in waiver of arbitration.

clause. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *see Builders First Source–S. Tex., LP v. Ortiz*, 515 S.W.3d 451, 455 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("When reviewing claims under the FAA, we look to federal law to resolve substantive issues, but apply state law to resolve procedural issues."). The Construction Contract provides that it is governed by the FAA and neither party disputes that the FAA applies.

A party seeking to compel arbitration must establish (1) the existence of a valid arbitration agreement and (2) that the claims at issue fall within the scope of the agreement. *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 397 (Tex. 2020). If the party seeking to compel arbitration meets this burden, the burden shifts to the party opposing arbitration, who must prove an affirmative defense to enforcement of the arbitration provision. *Id.* at 398; *Henry*, 551 S.W.3d at 115. Waiver by litigation conduct is an affirmative defense to enforcement of an arbitration provision. *Henry*, 551 S.W.3d at 115; *see also G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 520 (Tex. 2015).

## A. Implied Waiver of Right to Arbitration

Implied waiver is a defense to arbitration. *G.T. Leach Builders*, 458 S.W.3d at 511. A party asserting implied waiver as a defense to arbitration must prove that (1) the other party has "substantially invoked the judicial process," which is conduct inconsistent with a claimed right to compel arbitration, and (2) the inconsistent

conduct has caused it to suffer detriment or prejudice. *G.T. Leach Builders*, 458 S.W.3d at 511–12 (quoting *Perry Homes v. Cull*, 258 S.W.3d 580, 593–94 (Tex. 2008)). "Waiver . . . asks whether a party has substantially invoked the judicial process to an opponent's detriment, the latter term meaning inherent unfairness caused by 'a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage.'" *In re Citigroup Global Mkts.*, 258 S.W.3d 623, 625 (Tex. 2008) (quoting *Perry Homes*, 258 S.W.3d at 597).

## 1. Who Decides Waiver?

"Whether a party waived its right to arbitration by its litigation conduct is generally a question for the courts to decide." *Fid. Auto Group, LLC v. Hargroder*, 689 S.W.3d 1, 12 (Tex. App.—Beaumont 2024, no pet.) (citing *G.T. Leach Builders*, 458 S.W.3d at 520; *Perry Homes*, 258 S.W.3d at 588). This is because

> (1) "[c]ontracting parties would expect the court to decide whether one party's conduct before the court waived the right to arbitrate," (2) it is a "gateway" matter regarding "whether the parties have submitted a particular dispute to arbitration," and (3) "courts decide defenses relating solely to the arbitration clause."

*G.T. Leach Builders*, 458 S.W.3d at 520 (quoting *Perry Homes*, 258 S.W.3d at 588–89); *see Perry Homes*, 258 S.W.3d at 588 (stating "the court is obviously in a better position to decide whether [the conduct] amounts to waiver"). Although courts generally decide questions of "substantive arbitrability," questions of "procedural arbitrability" are typically left to arbitrators. *G.T. Leach Builders*, 458 S.W.3d at

26

520 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 81 (2002)); *see generally Jetall Cos., Inc. v. Sonder USA Inc.*, No. 01-21-00378-CV, 2022 WL 17684340, at \*11 n.4 (Tex. App.—Houston [1st Dist.] Dec. 15, 2022, no pet.) (mem. op.) (stating "waiver by litigation conduct [is] a matter of substantive arbitrability"). Thus, "courts should defer to arbitrators to resolve the issue of waiver when 'waiver concerns limitations periods or waiver of particular claims or defenses,' but [the court[ ] should decide issues of waiver by litigation conduct." *G.T. Leach Builders*, 458 S.W.3d at 521 (quoting *Perry Homes*, 258 S.W.3d at 588).

Because arbitration is a matter of contract, parties may agree that arbitrators, rather than courts, must resolve disputes over the validity and scope of their arbitration agreement. *See TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 702 (Tex. 2023); *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018). When parties contractually agree to delegate arbitrability disputes to the arbitrator, courts must enforce that agreement just as they must enforce an agreement to delegate resolution of the underlying merits to the arbitrator. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 121 (Tex. 2018). "If, on the other hand, the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question the parties did not submit to arbitration, namely, independently."

27

*TotalEnergies*, 667 S.W.3d at 702 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis in original)).

Courts will enforce an agreement to delegate arbitrability to the arbitrator only if the agreement is "clear and unmistakable." *TotalEnergies*, 667 S.W.3d at 702 (citing *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 525, 532 (Tex. 2019)). In *Jetall*, we concluded that when neither the arbitration provision nor the delegation clause in the contract specifically mentioned who would decide the question of waiver by litigation conduct, the parties did not "clearly and unmistakably delegate this issue of substantive arbitrability to the arbitrator." 2022 WL 17684340, at *11 n.4. Other courts have reached similar conclusions. *See Fid. Auto Group*, 689 S.W.3d at 13 ("Neither the arbitration agreement nor the delegation clause mention waiver by litigation conduct, and there is no 'clear and unmistakable evidence' overcoming the presumption the court will decide that issue."); *Vine v. PLS Fin. Servs., Inc.*, 689 F. App'x 800, 803–04 (5th Cir. 2017) (concluding there was no "clear and unmistakable evidence" parties intended to arbitrate litigation conduct waiver where agreement did "not explicitly mention litigation-conduct waiver"); *Qazi v. Stage Stores, Inc.*, No. 4:18-CV-0780, 2020 WL 1321538, at *5 (S.D. Tex. Mar. 17, 2020) (mem. op. and order) (concluding delegation clause did not contain "clear and unmistakable evidence" of parties' intent to arbitrate litigation conduct waiver where it never mentioned litigation conduct waiver).

## 2. Substantially Invoking the Judicial Process

The determination of whether a party has substantially invoked the judicial process "depends on the totality of the circumstances." *G.T. Leach Builders*, 458 S.W.3d at 512 (citing *Perry Homes*, 258 S.W.3d at 589–90). The "wide variety" of factors courts consider in determining whether the judicial process has been "substantially invoked" include:

> how long the party moving to compel arbitration waited to do so; the reasons for the movant's delay; whether and when the movant knew of the arbitration agreement during the period of delay; how much discovery the movant conducted before moving to compel arbitration, and whether that discovery related to the merits; whether the movant requested the court to dispose of claims on the merits; whether the movant asserted affirmative claims for relief in court; the extent of the movant's engagement in pretrial matters related to the merits (as opposed to matters related to arbitrability or jurisdiction); the amount of time and expense the parties have committed to the litigation; whether the discovery conducted would be unavailable or useful in arbitration; whether activity in court would be duplicated in arbitration; and when the case was to be tried.

*Id*. (citing *Perry Homes*, 258 S.W.3d at 590–91). No particular factor is dispositive. *RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016). Nor must all or most of these factors be present to support waiver. *Perry Homes*, 258 S.W.3d at 591. "Courts look to the specifics of each case." *Courtright v. Allied Custom Homes, Inc.*, 647 S.W.3d 504, 516 (Tex. App.—Houston [1st Dist.] 2022, pet. denied).

"Merely taking part in litigation" is "not enough" to constitute waiver by litigation conduct. *G.T. Leach Builders*, 458 S.W.3d at 512 (quoting *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006)). Generally, delay alone does not establish waiver. *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 763 (Tex. 2006) (orig. proceeding).

### 3. Prejudice

A party seeking to establish waiver of the right to arbitrate must also establish prejudice as a result of the opposing party's inconsistent conduct. *See G.T. Leach Builders*, 458 S.W.3d at 511–12. "In the context of waiver of the right to arbitrate, prejudice generally focuses on the inherent unfairness caused by a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage." *Momentum Project Controls, LLC v. Booflies to Beefras LLC*, No. 14-22-00712-CV, 2023 WL 4196584, at *5 (Tex. App.—Houston [14th Dist.] June 27, 2023, pet. denied) (mem. op.) (citing *G.T. Leach Builders*, 458 S.W.3d at 515; *Perry Homes*, 258 S.W.3d at 597). Relevant to the prejudice issue are considerations of delay, expense, or damage to another party's legal position. *See id.* (citing *Kennedy Hodges, L.L.P.*, 433 S.W.3d at 545; *Perry Homes*, 258 S.W.3d at 597).

In *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), the United States Supreme Court rejected any requirement of proof of prejudice as an "arbitration-specific" federal procedural rule. *See id.* at 416–19. Neither the Texas Supreme Court nor

30

this Court have addressed whether *Morgan* abrogates the requirement in Texas jurisprudence that a party seeking to establish waiver of the right to arbitrate must establish both (1) substantial invocation of the judicial process and (2) prejudice as a result of the opposing party's inconsistent conduct. *See Preferred Pools of Houston, Inc. v. Gossai*, No. 14-23-00635-CV, 2024 WL 4457032, at *7 (Tex. App.—Houston [14th Dist.] Oct. 10, 2024, no pet.) (mem. op.) ("Whether [*Morgan*'s holding] would govern in state court as a matter of procedure is unsettled and a matter for the Texas Supreme Court to determine."); *Momentum Project Controls, LLC*, 2023 WL 4196584, at *5 n.5 (describing issue as "unsettled" question of law). *But see Dallas Excavation Sys., Inc. v. Orellana*, 697 S.W.3d 702, 709 (Tex. App.—Dallas 2024, no pet.) (holding, pursuant to *Morgan*, "a showing of prejudice is no longer required in order to establish waiver, at least in cases involving the FAA"). Because we hold that HVLP did not establish that HCC substantially invoked the judicial process, we need not address whether evidence of prejudice is required under Texas law post-*Morgan*. *See Henry*, 551 S.W.3d at 118 (concluding that opponent did not establish that proponent substantially invoked judicial process under first prong and thus declining to reach prejudice under second prong).

### 4. Standard of Review

When facts are undisputed, whether the right to arbitrate has been waived is a matter of law subject to *de novo* review. *Id.* at 115 (stating whether party has waived

31

right to arbitrate is question of law that appellate courts review de novo); *G.T. Leach Builders*, 458 S.W.3d at 511 (same); *In re Serv. Corp. Intern.*, 85 S.W.3d 171, 174 (Tex. 2002) ("We have also held that '[w]hether a party's conduct waives its arbitration rights under the Federal Arbitration Act is a question of law.'"). If the facts relevant to the waiver defense are disputed, we defer to the trial court's findings that are supported by the evidence. *Perry Homes*, 258 S.W.3d at 598 (stating courts defer to trial court's factual findings regarding waiver if findings are supported by evidence).

**Delegation of Arbitrability**

In its first issue, HCC argues that the trial court erred in finding that it waived its right to arbitration and granting HVLP's plea in abatement on that basis because the arbitration agreement provides that the arbitrator, and not the court, has the exclusive power to determine all "questions of arbitrability," including whether HCC waived its right to arbitrate. Relying on *TotalEnergies*, HCC argues that by incorporating the Arbitration Rules into the Construction Contract, the parties demonstrated their clear and unmistakable intent to delegate the issue of waiver of the right to arbitrate by litigation conduct to the arbitration panel. HCC further argues the trial court lacked jurisdiction to interfere with the arbitrator's finding that HCC did not waive its right to arbitration and that by pursuing the plea in abatement in the trial court after the arbitration panel denied the same motion, HVLP was, in

32

effect, trying to "appeal" the arbitration panel's interlocutory ruling denying their plea in abatement.

HVLP argues that the issue of waiver of the right to arbitrate by litigation conduct is decided by the court, not the arbitrator, and HCC's reliance on *TotalEnergies* is misplaced because *TotalEnergies* did not address whether the court or the arbitrator had the power to decide whether a party waived its right to arbitration by litigation conduct.

## A. The Parties Did Not Clearly and Unmistakably Delegate the Issue of Waiver by Litigation Conduct to the Arbitrator

In *TotalEnergies*, the Texas Supreme Court held that "as a general rule, an agreement to arbitrate in accordance with the AAA or similar rules constitutes a clear and unmistakable agreement that the arbitrator must decide whether the parties' disputes must be resolved through arbitration." 667 S.W.3d at 708. In that case, the parties, who had agreed to arbitrate in accordance with the AAA Commercial Rules, disputed (1) whether certain of their claims were subject to arbitration and (2) who had the power to decide whether a claim was arbitrable—the trial court or the arbitrator. Rule 7(a) of the AAA Commercial Rules states: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *Id.* at 700 (quoting Am. Arb. Ass'n, Commercial Arbitration Rules and Mediation Procedures, R-7(a) (2013),

33

https://adr.org/sites/default/files/CommercialRules_Web-Final.pdf. (last accessed Aug. 25, 2025)). The Court held that by agreeing to arbitrate "in accordance with the rules of the AAA," the parties "incorporated the AAA rules into their arbitration agreement, and thus the rules are binding, at least absent any conflict between the two." *Id.* at 709. The Court further held that because Rule 7(a) states that the arbitrator "*shall* have *the* power to rule on . . . any objections with respect to the . . . arbitrability of any claim or counterclaim," the arbitrator's power to decide the "arbitrability of any claim" was exclusive to the arbitrator. *Id.* (emphasis added); *see also id.* (concluding that "by providing that the arbitrator '*shall* have *the* power' to determine the arbitrability of any claim, the rule clearly and unmistakably delegates that decision exclusively to the arbitrator") (emphasis in original).

Relying on *TotalEnergies*, HCC argues that by incorporating the Arbitration Rules into the Construction Contract, the parties demonstrated their clear and unmistakable intent to delegate to the arbitration panel all issues of arbitrability, including the issue of waiver of the right to arbitrate by litigation conduct.

We disagree with HCC that the parties' agreement delegated the issue of waiver by litigation conduct to the arbitrator or that *Total Energies* so dictates. The delegation clause in *TotalEnergies* gave the arbitrator the power to rule on "any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim" and the issue

34

presented in that case was which, if any, of the claims were subject to arbitration.[9]

*Id.* at 709.  The court held:

> We thus hold that, as a general rule, an agreement to arbitrate disputes in accordance with rules providing that the arbitrator "shall have the power" to determine "the arbitrability of any claim" incorporates those rules into the agreement and clearly and unmistakably demonstrates the parties' intent to delegate arbitrability issues to the arbitrator.

*Id.* at 712.  *TotalEnergies* did not address the question of whether delegation to the arbitrator of the power to rule on "any objections with respect to the existence, scope, or validity of the arbitration agreement" also delegates to the arbitrator the exclusive power to decide the issue of waiver by litigation conduct.  And in *Perry Homes*, the Court made clear that whether a party has waived its right to arbitration by its litigation conduct is a matter of substantive arbitrability reserved for the courts to decide.  *See Perry Homes*, 258 S.W.3d at 588 (stating "the court is obviously in a better position to decide whether [a party's conduct] amounts to waiver"); *G.T. Leach Builders*, 458 S.W.3d at 521 (stating courts are best suited to decide issues of waiver by litigation conduct).

Here, HCC and HVLP agreed to arbitrate their claims arising under the Construction Contract "in accordance" with the Construction Industry Arbitration

---

[9]     The agreement in *TotalEnergies* incorporated the AAA Commercial Rules whereas the Construction Contract incorporated the AAA Construction Industry Arbitration Rules.  *See TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 702 (Tex. 2023).

Rules. Rule R-9 states that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." Am. Arbitration Ass'n, Constr. Indus. Arbitration Rules and Mediation Procedures, R-9(a). Because Rule R-9 provides that the arbitrator "*shall* have *the* power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement," the arbitrator's power to decide these issues is exclusive. *See TotalEnergies*, 667 S.W.3d at 709. Rule R-9 thus gives the arbitrator the exclusive power to decide the gateway questions of arbitrability regarding "the existence, scope, or validity of the arbitration agreement," but, contrary to HCC's argument, it does not give the arbitrator the exclusive power also to determine whether HCC waived its right to arbitrate by its litigation conduct. Indeed, neither the Arbitration Rules nor the Construction Contract address who has the power to decide the issue of waiver by litigation conduct. Because neither the Arbitration Rules nor the Construction Contract address who has the power to decide the issue of waiver by litigation conduct, we cannot say that the parties clearly and unmistakably delegated this issue to the arbitration panel. *See Fid. Auto Group*, 689 S.W.3d at 13 ("If the arbitration agreement omits any mention of waiver [by litigation conduct], the issue has not been clearly and unmistakably delegated to the arbitrator."); *Jetall*, 2022 WL 17684340, at *11 n.4 (concluding parties did not "clearly and unmistakably delegate

this issue of substantive arbitrability to the arbitrator" when neither arbitration provision nor contract's delegation clause specifically mentioned who decided question of waiver by litigation conduct).

The Dallas Court of Appeals recently reached the same conclusion in *Zurvita Holdings, Inc. v. Jarvis*, No. 05-23-00661-CV, 2024 WL 1163209, at *7 (Tex. App.—Dallas Mar. 14, 2024, pet. abated for bankruptcy) (mem. op.). Relying on *TotalEnergies*, the appellants in *Zurvita* argued that the question of whether a party waived its right to arbitrate by litigation conduct "goes to the arbitrability of the claims," and because the parties had incorporated the AAA Commercial Arbitration Rules into their agreement, the parties had delegated the issue of waiver by litigation conduct to the arbitrator. *Id.* The court disagreed, holding *TotalEnergies* decided "the distinct question of who decides arbitrability when the agreement incorporates the AAA or similar rules that delegate arbitrability to the arbitrator,'" not the question of who decides waiver of the right to arbitrate. *Id.* (quoting *TotalEnergies*, 667 S.W.3d at 697).

We thus conclude that the trial court had jurisdiction to decide whether HCC waived its right to arbitrate by litigation conduct.

## B. The Trial Court Did Not Impermissibly Review the Arbitration's Panel Ruling on Waiver.

HCC's arguments that the trial court effectively "reviewed" the arbitrators' interlocutory ruling denying HVLP's plea in abatement in violation of the Texas

common law finality rule and that the trial court's order granting HVLP's plea in abatement impermissibly interfered with the arbitrator's finding that HCC did not waive its right to arbitration are not persuasive.

The arbitration panel's order denying HVLP's plea does not state the basis for the panel's ruling and as the trial court observed in its order granting the plea, "there is disagreement between the parties regarding why this relief was denied" by the arbitration panel. HCC argues that the panel denied HVLP's plea in abatement because the panel found that HCC had not waived its right to arbitration, while HVLP argues that the arbitration panel denied the plea in abatement because, as HCC argued to the arbitrators, whether HCC waived its right to arbitration by its litigation conduct is an issue for the trial court, not the arbitration panel. Under these circumstances, we cannot say that the trial court's ruling on HVLP's plea impermissibly interfered with the arbitration panel's denial of the plea.

Contrary to HCC's characterization of HVLP's conduct, we also disagree that HVLP was attempting to "appeal" to the trial court the arbitration panel's interlocutory order denying HVLP's plea. Rather, HVLP filed its plea in both proceedings and the trial court decided the issue independently from the arbitration panel. Furthermore, the parties have not directed us to, nor have we found any authorities indicating that trial courts must defer to an arbitration panel's ambiguous rulings on the same or similar issues.

We overrule HCC's first issue.

## Waiver by Litigation Conduct

In its second, third, and fourth issues, HCC argues the trial court erred in finding that HCC waived its right to arbitrate by litigation conduct because HVLP failed to meet its burden of proving that HCC substantially invoked the judicial process to HVLP's and HVGP's detriment or prejudice. According to HCC, the trial court's finding that HCC waived its right to arbitrate by litigation conduct is erroneous because (1) HCC's litigation conduct was expressly permitted by what HCC characterizes as the non-waiver-by-litigation provisions in Arbitration Rules 38(c), 39(h), and 55(a), which were incorporated by reference into the Construction Contract, (2) HCC's litigation conduct fell within the "safe harbor" defined in *Perry Homes* and *G.T. Leach Builders*, and (3) the court misapplied the totality of the circumstances test.

HVLP argues, among other things, that the inclusion of non-waiver provisions does not alter the court's waiver analysis because courts must nevertheless evaluate waiver by considering the totality of the circumstances, and no court has identified a "safe harbor" of litigation conduct that precludes a finding of waiver. According to HVLP, HCC substantially invoked the judicial process by filing its civil suit seven months after it initiated arbitration, asserting affirmative claims for the same injunctive relief in the trial court and the arbitration proceeding, asserting alter ego

39

claims and claims for a constructive trust against Trans American and HVH in the civil suit even though both parties could be added to the arbitration proceeding, moving for default judgment on its claims against Trans American and HVH in the civil suit, obtaining discovery from third-party Morgan Stanley in the civil action that was not available (or much more difficult to obtain) in arbitration, and using the Morgan Stanley documents to obtain relief in the arbitration proceeding.

HVLP argues that the trial court correctly applied the totality of the circumstances test when it considered such evidence of waiver as a whole. It also argues that the trial court was correct in finding that, pursuant to *Morgan*, HVLP was not required to demonstrate that it was prejudiced by HCC's invocation of the judicial process, and even if a showing of prejudice were required, HVLP established that it suffered detriment or prejudice as a result of HCC's conduct in the trial court because the record reflects that HCC tried to have it both ways by switching between litigation and arbitration to its perceived advantage, including filing the civil suit in order to obtain third-party discovery that it otherwise would not have been able to obtain in arbitration, and using that information to assert a new breach of contract claim in the arbitration proceeding against HVLP, as well as to arbitrate the same issue it had sought to litigate—HCC's entitlement to injunctive relief. *See Perry Homes*, 258 S.W.3d at 589–90 ("'Prejudice' has many meanings, but in the context of waiver under the FAA it relates to inherent unfairness—that is, a party's attempt

to have it both ways by switching between litigation and arbitration to its own advantage.").

## A. HCC Did Not Waive its Right to Arbitration by Substantially Invoking the Judicial Process

In most cases involving claims of implied waiver, the party moving to compel arbitration files a lawsuit first and engages in some degree of litigation before moving to compel arbitration. Here, HCC initiated arbitration proceedings seven months before it filed what it characterizes as a "placeholder" lawsuit in district court to toll the statute of limitations on its lien foreclosure claim. While some of the factors courts typically consider to determine whether a party has waived arbitration are not applicable here, these non-exclusive factors nevertheless provide guidance.

HCC filed a demand for arbitration pursuant to the Construction Contract and arbitrated its breach of contract claim against HVLP for seven months before HCC filed a lawsuit seeking to toll the one-year statute of limitations for its lien foreclosure claim. It is undisputed that HCC never opposed arbitration and its pleadings in the trial court were made expressly "subject to" and "without waiver" of the on-going arbitration proceedings and its right to arbitrate. Such conduct reflects HCC's intent to preserve its right to arbitrate, not abandon it. *See In re Citigroup Glob. Mkts., Inc.*, 258 S.W.3d 623, 626 (Tex. 2008) (orig. proceeding) (noting, in concluding that defendant did not expressly or impliedly waive right to arbitration, that defendant "never expressly waived or objected to arbitration").

41

In addition to its original petition filed on January 6, 2023, HCC also filed in the trial court its first amended petition and request for injunctive relief (January 26, 2023), notice of temporary injunction hearing (January 26, 2023), a trial brief in support of its request for injunctive relief (February 9, 2023), a supplemental trial brief in support of its request for injunctive relief (February 10, 2023), its original answer to HVLP's counterclaims (March 10, 2023), HCC's response to HVLP's plea in abatement and motion for protection with HCC's plea in abatement and motion to compel arbitration of HVLP's counterclaims (March 10, 2023), motion for interlocutory default judgment against Trans American and HVH—the only defendants in the civil suit not also parties to the arbitration proceeding—and notice of submission (April 24, 2023), HCC's first amended plea in abatement and motion to compel arbitration of the counterclaims (May 3, 2023), HCC's response to HVLP's first supplemental plea in abatement and motion for protection (May 17, 2023), HCC's reply to the "Supplemental Reply to HCC's Objections and Response to HVLP's First Amended Plea in Abatement and First Supplemental Plea in Abatement & Motion for Protection, and Response to HCC's Motion to Compel" (May 18, 2023), HCC's response to Appellees' motion for sanctions (June 6, 2023), HCC's motion to enforce the court's May 19, 2023 order staying trial court proceedings, motion to quash subpoena issued by Appellees to HCC's president and

motion for protective order (June 8, 2023), and HCC's response to Appellees' hearing brief on the motion for sanctions against HCC (June 8, 2023).

HCC also served subpoenas for testimony and documents on various parties, including Barbouti, in conjunction with a four-day hearing on Appellees' motion for sanctions, and filed various motions objecting to subpoenas issued by Appellees and responding to Appellees' objections to HCC's subpoenas. HCC correctly points out that after February 10, 2023, its activities in the trial court "were almost exclusively defensive, consisting primarily of successfully defending itself against Appellees' Motion for Sanctions via numerous motion filings and attending and participating [in] 4 hearings before the trial court, which was heavily litigated by Appellees."

The record also reflects that HCC engaged in limited discovery in the trial court. HCC did not notice any depositions or propound formal discovery requests in the trial court. It made one request via email to HVLP's attorneys to disclose the amount of money left in the Trans American brokerage account. Even if HCC's issuance of the subpoena to Morgan Stanley can be accurately characterized as HCC's having sought third-party discovery in the trial court, the record reflects that the documents Morgan Stanley provided to HCC in response to the subpoena were related to HCC's request for a temporary injunction pending the outcome of the arbitration proceeding, not the merits of HCC's breach of contract claim against HVLP for non-payment, which was pending before the arbitration panel, or HCC's

43

claim for foreclosure of its mechanic's and materialman's lien pending before the trial court. *Cf. Perry Homes*, 258 S.W.3d at 591–92 (considering how much pretrial activity and discovery related to merits of dispute rather than arbitrability or jurisdiction).

Although a party seeking an injunction must establish a likelihood of success on the merits of the party's claims to obtain injunctive relief, it is apparent that HCC was requesting the financial records to ensure that HVLP would be able to pay any damages awarded to HCC by the arbitration panel. *See Courtright*, 647 S.W.3d at 519 (stating party seeking injunction must establish likelihood of success on merits of party's claims to obtain injunctive relief); *EMS USA, Inc. v. Shary*, 309 S.W.3d 653, 658 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("The legal issues before a trial court at a temporary injunction hearing are whether the applicant showed a probability of success and irreparable injury."). While HCC also requested documents from Morgan Stanley that relate to the merits of its breach of contract claim against HVLP, including checks and other payments made by HVLP to HCC pursuant to the Construction Contract and all communications from HCC to HVLP claiming non-payment of two pay applications, Morgan Stanley did not produce such records.

Furthermore, even including HCC's subpoena to Morgan Stanley, the extent of the documents requested by HCC falls far short of the amount and scope of

discovery in other cases in which courts have held a party waived its right to arbitrate by substantially invoking the judicial process. *See Pro. Advantage Software Sols., Inc. v. W. Gulf Mar. Ass'n*, No. 01-15-01006-CV, 2016 WL 2586690, at *4 (Tex. App.—Houston [1st Dist.] May 5, 2016, no pet.) (mem. op.) (affirming denial of motion to compel because party waived its right to arbitrate by substantially invoking judicial process and considering "[s]ignificant discovery" conducted "by both parties," consisting of tens of thousands of documents produced and depositions of three witnesses, and request by movant for additional time to conduct further depositions of experts before moving to compel arbitration); *PRSI Trading Co.*, 2011 WL 3820817, at *3–4 (affirming denial of motion to compel because party waived its right to arbitrate by substantially invoking judicial process; considering that party seeking to compel arbitration served merits-related discovery requests, deposed two corporate representatives, deposed corporate representative of third party who had to travel from overseas for deposition, obtained more than 17,000 pages of documents, agreed to appointment of special discovery master, and filed multiple motions to compel discovery); *see also Courtright*, 647 S.W.3d at 518–19 (affirming denial of motion to compel because party waived its right to arbitrate by substantially invoking judicial process and noting movants served forty-seven interrogatories, 135 requests for production, seven deposition notices, and two subpoenas to non-parties, plus movants "conducted many hours of depositions and generated hundreds of

pages of testimony"). Indeed, courts have found that parties who engaged in *more* pre-trial litigation and discovery than HCC did not waive their right to arbitrate by judicial conduct. *See In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 694–95 (Tex. 2008) (holding party failed to overcome presumption against waiver where, among other things, it took no depositions, although it noticed one deposition before cancelling it, and it served one set of written discovery the day before moving to compel arbitration); *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998) (concluding party did not waive right to arbitration by propounding one set of eighteen interrogatories and one set of nineteen requests for production); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996) (holding party did not waive arbitration by filing answer, discussing docket-control order, sending written discovery, noticing deposition, and agreeing to postpone trial setting); *Garg & Assocs., P.C. v. Pham*, 485 S.W.3d 91, 110 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding responding to discovery, propounding limited written discovery, and participating in motion for continuance did not waive right to arbitration); *Granite Const. Co. v. Beaty*, 130 S.W.3d 362, 367 (Tex. App.—Beaumont 2004, no pet.) (holding no waiver of arbitration right despite filing of motion to transfer venue, propounding of written discovery, preparation of discovery responses, presentation of two witnesses for deposition, and participation in unsuccessful mediation).

46

HVLP argues that HCC substantially invoked the judicial process by, among other things, asserting affirmative claims for injunctive relief in the trial court and the arbitration proceeding. In cases governed by the FAA, a trial court may permissibly enter a preliminary injunction to preserve the status quo before it rules on the arbitrability of a claim. *See Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011). Moreover, the Arbitration Rules contain non-waiver provisions that permit a party to seek injunctive relief in the district court and provide that seeking this remedy does not constitute waiver of the right to arbitrate. Arbitration Rule 38(a) provides that an arbitrator can grant any necessary "interim measures," including granting an injunction, but Rule 38(c) permits a party to request interim measures from a judicial authority, stating that such a request "shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate." Am. Arbitration Ass'n, Constr. Indus. Arbitration Rules and Mediation Procedures, R-38(c). Similarly, Arbitration Rule 39 allows arbitrators to make "interim measures," including obtaining injunctive relief, and "emergency measures of protection," while also stating that a request for "interim measures addressed by a party to a judicial authority shall not be deemed incompatible with this Rule."[10] Am. Arbitration Ass'n, Constr. Indus. Arbitration Rules and Mediation Procedures, R-

---

[10]     In addition, Arbitration Rule 54(a) states, "No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate."

47

39(h); *see Turnbull Legal Group, PLLC v. Microsoft Corp.*, No. 01-20-00851-CV, 2022 WL 14980287, at *13 (Tex. App.—Houston [1st Dist.] Oct. 27, 2022, pet. denied) ("Seeking injunctive relief in court is [] considered consistent with the right to arbitrate according to the AAA's Consumer and Commercial Rules.").

HCC argues that the trial court erred in finding that it waived its right to arbitration because these "anti-waiver" provisions, which are part of the Construction Contract, expressly permitted HCC to "fil[e] a lawsuit to preserve HCC's judicial right to foreclose on HCC's Mechanic's Lien and seek[] temporary injunctive relief to ensure that funds existed to pay an eventual award from the Arbitration" without waiving its right to arbitration. The presence of a "no waiver" clause in an arbitration agreement, however, does not alter the ordinary analysis undertaken to determine if a party has waived its right to arbitration by litigation conduct, nor does it preclude a court from finding that a party has waived its right to arbitration by litigation conduct. *See Haddock v. Quinn*, 287 S.W.3d 158, 176 (Tex. App.—Fort Worth 2009, pet. denied) (stating presence of "no-waiver" clause does "not alter the ordinary [waiver] analysis"); *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 348 (5th Cir. 2004) (stating "the fact that an arbitration agreement incorporates such a [no-waiver] provision would not prevent a court from finding that a party waived arbitration by actively participating in protracted litigation of an arbitrable dispute") (quoting *S & R Co. v. Latona Trucking, Inc.*, 159

48

F.3d 80, 85 (2nd Cir. 1998)). Thus, even when an arbitration agreement includes non-waiver provisions, courts must still consider the totality of the circumstances to determine whether a party waived its arbitration rights by litigation conduct. *See Haddock*, 287 S.W.3d at 176. In other words, the presence of a "no waiver" clause in an arbitration agreement is a factor courts consider when evaluating whether a party substantially invoked the judicial process, but it is not dispositive. *See also generally Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 481 (Tex. 2017) ("We consider the force and effect of a nonwaiver provision in light of Texas's public policy that strongly favors freedom of contract. . . . Absent compelling reasons, courts must respect and enforce the terms of a contract the parties have freely and voluntarily entered . . . [A]s a general proposition, nonwaiver provisions are binding and enforceable.") (internal citations and quotation marks omitted).

Appellees argue that HCC demonstrated its intention to waive arbitration by asserting claims in the civil suit seeking the same affirmative relief that it sought or could have sought in the arbitration and moving for default judgment in the civil suit against HVH and Trans American, who were not parties to the arbitration, and setting the default judgment motion for submission. HCC argues that although it sought affirmative relief against Trans American and HVH in the trial court, Trans American and HVH were not subject to the arbitration agreement and could not be compelled to arbitrate and, pursuant to the Construction Contract, Trans American

and HVH could not be joined in the arbitration proceeding without their express written consent. HCC argues that such conduct is not inconsistent with its right to arbitrate, nor does it clearly demonstrate its intent to relinquish, abandon, or waive its right to arbitrate its claims under the Construction Contract. *See LaLonde v. Gosnell*, 593 S.W.3d 212, 219–20 (Tex. 2019) (stating "the universal test for implied waiver by litigation conduct is whether the party's conduct—action or inaction—clearly demonstrates the party's intent to relinquish, abandon, or waive the right at issue—whether the right originates in a contract, statute, or the constitution. This is a high standard.").

Ordinarily, the filing of a third-party petition and motion for default judgment against a third-party defendant does not substantially invoke the judicial process for claims against another party. *See Pippins*, 499 S.W.3d at 431 (holding RSL's conduct in litigation regarding one party was not relevant to question of whether RSL waived its arbitration rights with other parties); *Kennedy Hodges, L.L.P.*, 433 S.W.3d at 545 ("[A] party who litigate[s] one claim with an opponent d[oes] not substantially invoke the litigation process for a related yet distinct claim against another party with whom it ha[s] an arbitration agreement."). Here, however, HCC asserted the same claims for foreclosure of a lien and injunctive relief against HVLP, who is bound by the arbitration agreement, and against Trans American and HVH, who are not subject to the arbitration agreement, and HCC argued that the court

50

should "disregard [the four defendant's] corporate forms and impose liability against them on a joint and several basis, under principles of Texas alter ego law," and Trans American and HVLP "should be held liable as joint venturers, partners, or under principles of agency." Thus, a default judgment against Trans American and HVH would impact HCC's claims against HVLP as well. HCC did not, however, secure relief on its motion for default judgment because Trans American and HVH filed answers in the civil suit shortly thereafter and the trial court took thus took no action on the motion.

HCC argues that contrary to HVLP's argument, HCC was not seeking judicial foreclosure of its lien in arbitration because the arbitration panel did not have authority under Texas law to foreclose on the lien. *See* TEX. PROP. CODE § 53.154 ("A mechanic's lien may be foreclosed only on judgment of a court of competent jurisdiction foreclosing the lien and ordering the sale of the property subject to the lien."). Based on our review of the record before us, we agree. Rather than seeking foreclosure of the lien in the arbitration proceeding, HCC was seeking an award of damages based on its claim that HVLP breached the Construction Contract by failing to pay HCC for work it had performed on the Project. Should it prevail on this basis in the arbitration, HCC could then move the trial court to foreclose on the mechanic's lien based on the arbitration panel's award. *See AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 522 (Tex. App.—Fort Worth 2009, no pet.) (stating

51

to prevail on claim to foreclose constitutional mechanic's lien, lienholder must prove performance of labor and existence of debt).

Based on the undisputed evidence before us relevant to HCC's litigation conduct, considered as a whole, we conclude that HVLP did not establish that HCC waived its right to arbitration by substantially invoking the judicial process. We thus hold the trial court erred in finding HCC waived its right to arbitration. Because HVLP did not meet its burden to establish that HCC waived its right to arbitration by substantially invoking the judicial process, we reverse the trial court's order granting HVLP's plea in abatement based on waiver.[11]

## Appellees' Cross-Appeal

Appellees challenge the trial court's denial of their (1) motion to quash the subpoena to Morgan Stanley, (2) request for a protective order, and (3) motion for sanctions against HCC based on HCC's acquisition and use of Appellees' financial records produced by Morgan Stanley to HCC in response to the subpoena. According to Appellees, the trial court abused its discretion in refusing to quash the subpoena and enter a protective order because HCC did not comply with Section

---

[11] Because we hold HVLP failed to establish that HCC waived its right to arbitration by substantially invoking the judicial process, we need not address whether evidence of prejudice is required under Texas law post-*Morgan*. *See Henry v. Cash Biz, LP*, 551 S.W.3d 111, 118 (Tex. 2018) (holding appellant failed to establish that other party invoked judicial process under first prong and thus declining to reach prejudice under second prong).

59.006 of the Texas Finance Code and the Texas Rules of Civil Procedure in seeking and obtaining Appellees' brokerage account records from Morgan Stanley, and because the brokerage account records were irrelevant to the civil suit. They argue that allowing HCC to possess and use their confidential financial information was invasive of their rights to privacy.

Appellees further argue that the trial court erred in its decision to not impose sanctions, because the decision hinged on the trial court's abuse of discretion in failing to properly interpret and apply Section 59.006 of the Finance Code and the Rules of Civil Procedure, resulting in the erroneous ruling that HCC was not required to provide Appellees notice of the Subpoena to Morgan Stanley.

## A. Jurisdiction

Appellees argue we have interlocutory appellate jurisdiction to review the issues raised in their cross-appeal because we have jurisdiction to review the trial court's order abating the arbitration proceeding under Section 171.098(a)(2) of the Texas Civil Practice and Remedies Code, which authorizes interlocutory appeals from orders granting an application to stay arbitration, and pendent interlocutory jurisdiction over the other parts of the order that may affect the validity of order abating arbitration. *See* TEX. CIV. PRAC. & REM. CODE § 171.098(a)(2); *see also Letson v. Barnes*, 979 S.W.2d 414, 417 (Tex. App.—Amarillo 1998, pet. denied) (stating "to the extent that the subject matter of [a] non-appealable interlocutory

53

order may affect the validity of the appealable order, the non-appealable order may be considered" and thus court may "address the issue of subject matter jurisdiction over the cause even though that topic is not within those enumerated under section 51.014 of the Civil Practice and Remedies Code"); *R.R. Comm'n v. Air Prods. & Chems., Inc.*, 594 S.W.2d 219, 221 (Tex. App.—Austin 1980, writ ref'd n.r.e.) ("Non-appealable interlocutory orders cannot be attacked in an appeal from an appealable interlocutory order, except insofar as the question raised might affect the validity of the appealable order.").[12]  According to Appellees, "the trial court's rulings forming the core of its order refusing to quash the subpoena, enter a protective order, and impose sanctions may affect the validity of the appealable order abating arbitration."

The trial court's denials of Appellees' motion to quash the subpoena, request for protective order, and motion for sanctions were not based on the court's decision to grant HVLP's plea, which was based on the court's finding that HCC waived its right to arbitration.  The trial court's finding of waiver of arbitration was based in part on the court's finding that HCC used the civil lawsuit to serve a subpoena on

---

[12]     Appellees' argument that we have pendent interlocutory jurisdiction over their cross-appeal is based on *Santos Ltd. v. Gibson*, No. 14-00-00151-CV, 2000 WL 1588095, at *2–3 (Tex. App.—Houston [14th Dist.] Oct. 26, 2000, no pet.) (not designated for publication) (discussing "'pendent' interlocutory jurisdiction"). *Sanchez* is an unpublished opinion that was issued before January 1, 2003, and thus has no precedential value. *See* TEX. R. APP. P. 47.7(b) & 2008 cmt.

Morgan Stanley and its finding that HCC secured financial documents from the financial institution that it otherwise would not have been able to acquire through arbitration. Whether HCC was required to comply with Section 59.006 in issuing the subpoena is a separate issue that is unrelated to whether HCC waived its right to arbitration and thus did not impact the validity of the trial court's decision to grant the plea based on waiver. Similarly, the trial court's denial of Appellees' motion for sanctions, which was based in part on the denial of HVLP's motion to quash the subpoena and for protective order, also has no impact on the validity of the trial court's finding of waiver.

Because the trial court's denial of HVLP's motion to quash the subpoena, HVLP's motion for protective order, and Appellees' motion for sanctions cannot impact the validity of the court's ruling on the plea in abatement, we do not have pendant interlocutory jurisdiction over Appellees' cross-appeal. *See Letson*, 979 S.W.2d at 417 (stating "to the extent that the subject matter of [a] non-appealable interlocutory order may affect the validity of the appealable order, the non-appealable order may be considered").

We dismiss the cross-appeal for lack of jurisdiction.

## B. Petition for Writ of Mandamus

Should we find we lack jurisdiction over their cross-appeal, Appellees request we treat their cross-appeal as a petition for writ of mandamus. We agree to do so.

*See In re R.G.*, 388 S.W.3d 820, 822–23 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding) (construing filing as petition for writ of mandamus based on filer's request to do so if court of appeals concluded appellate jurisdiction was lacking).

### 1.     Applicable Law

Mandamus is an extraordinary remedy that is available only in limited circumstances. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). To secure mandamus relief, a relator must establish that (1) the trial court committed a clear abuse of discretion or violated a duty imposed by law, and (2) there is no adequate remedy by appeal. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion when "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law." *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (internal quotation marks and citations omitted).

Mandamus will not issue when there is a clear and adequate remedy at law. *Walker*, 827 S.W.2d at 840. We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Acad., Ltd.*, 625 S.W.3d 19, 32 (Tex. 2021) (orig. proceeding). "Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss." *Id.* (quoting *In re Prudential Ins.*, 148

56

S.W.3d at 136). When determining whether an adequate remedy at law exists, we consider whether mandamus will "preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare [the litigants] and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. An appellate remedy is not inadequate merely because it may result in more expense or delay than obtaining a writ. *Walker*, 827 S.W.2d at 842.

## 2. Motion for Sanctions

We review a trial court's imposition of sanctions under an abuse of discretion standard. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). A trial court abuses its discretion if it acts arbitrarily or unreasonably, or without reference to guiding rules or principles. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). A sanctions order is generally subject to review on appeal from the final judgment, but, under certain circumstances, it is subject to review before final judgment by writ of mandamus. *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding).

The Texas Rules of Civil Procedure authorize trial courts to impose sanctions for discovery abuses. *See* TEX. R. CIV. P. 215.3 (permitting court to impose

57

appropriate sanctions if court finds party is abusing discovery process in "seeking, making, or resisting discovery"). A discovery sanction should be no more severe than necessary to satisfy one of its legitimate purposes. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). Those purposes are to (1) secure the parties' compliance with the discovery rules, (2) deter other litigants from violating the discovery rules, (3) punish violators, and (4) compensate the aggrieved party for expenses incurred. *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 540 (Tex. 2016).

Courts also have an inherent power to discipline an attorney's behavior if it is in bad faith. *See Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 717–18 (Tex. 2020). This power, however, should be used sparingly and "exists to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process." *Id.* (internal quotes omitted.). Bad faith is the "intent to engage in conduct for an impermissible reason, willful noncompliance, or willful ignorance of the facts." *Id.* at 719–20. This includes "conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose." *Id.* (citation omitted).

Appellees argue the trial court's refusal to impose sanctions under Rule 215 or the court's inherent power was based on the court's erroneous findings that the Morgan Stanley subpoena was a trial subpoena, and thus HCC was not required to comply with Section 59.006 of the Finance Code and provide Appellees with notice

of the subpoena as required by the Rules of Civil Procedure. According to Appellees, this is the basis of the court's finding that Morgan Stanley "voluntarily produced" Appellees' confidential financial records and HCC "d[id] nothing wrong" or "sanctionable" in accepting and then using them in the arbitration.

HCC argues that Appellees are not entitled to mandamus relief because, among other things, the trial court ruled on the motion for sanctions "after hearing conflicting testimony from four witnesses, reviewing thirty documentary Exhibits, analyzing a mass of briefs, and considering the parties' respective arguments, which required the resolution of a host of hotly disputed factual and legal questions." *See HouseCanary, Inc. v. Title Source, Inc.*, 622 S.W.3d 254, 259 (Tex. 2021) (stating trial court does not abuse its discretion when decision based on conflicting evidence, at least some of which reasonably supports court's decision).

> In its order denying the motion for sanctions, the trial court found:
>
> While the Plaintiff's conduct in this case may be considered litigation gamesmanship, there is nothing about it is that is dishonest, discriminatory, or malicious. The Court agrees with the Plaintiff that the Morgan Stanley Subpoena was a trial subpoena, and thus notice to the opposing party was not required. This is different than a discovery subpoena which does require notice. There is also nothing sanctionable about using the materials obtained from the Morgan Stanley Subpoena in the Arbitration.
>
> The Defendants argue that the use of the Morgan Stanley Subpoena without complying with the Texas Finance Code is a violation of law, and thus subject to sanctions. Specifically, a financial institution shall produce customer records only if the request was served twenty-four days before compliance was required. Tex. Fin. Code §59.006(b)(i). In

59

this case, the Plaintiff served Morgan Stanley at most twelve-days before documents were needed. At first glance, it may seem as though this would constitute a violation of the discovery process. However, this is not the case. Failure to comply with the Finance Code makes a subpoena invalid, not illegal. *See Enviro Protection, Inc. v. National Bank,* 989 S.W.2d 454, 456 (Tex. App.—El Paso, 1999, no pet.). Since it was invalid, Morgan Stanley was never under any legal obligation to provide documents, and any such production is considered voluntary. *See id.* Here, the failure to conform to the same 24-day requirement would only invalidate the Morgan Stanley Subpoena. Therefore, any documents produced by Morgan Stanley was done so voluntarily. If the Defendants feel that such a statutory violation caused them harm, that is an issue between them and Morgan Stanley. The Plaintiff, however, has done nothing wrong in accepting financial documents voluntarily produced.

Although the court abated the arbitration proceeding as a form of "sanctions," the court found that Appellees' other requested sanctions were "not warranted, [were] not proportional to the conduct of [HCC], and [were] contrary to this case proceeding in the trial court."[13]  The trial court further stated:

> There is no dispute that [HCC] is entitled to discover the Morgan Stanley Documents in the State Court Litigation, and that state court proceeding[s] employ liberal discovery rules. As such, there is no need for a "claw back." Further, there is no statutory or equitable reason to grant attorneys' fees to either side in connection with these proceedings (although nothing herein prevents one side or the other from making a claim to fees, including the fees related to this Motion, in connection to a final judgment in this case).

Appellees argue that

> Sanctions are warranted because the evidence shows that [HCC] intentionally failed to comply with section 59.006 and thus abused the

---

[13]     After ordering that the arbitration proceedings are abated, the trial court stated that "none of the other requested 'sanctions' are granted."

discovery process, resulting in the so-called "voluntary" production of Cross-Appellants' confidential financial records, which [HCC] improperly used in the arbitration despite the limitations imposed by section 59.006.

Even assuming HCC was required to comply with Section 59.006 when it subpoenaed Morgan Stanley and HCC failed to do so, the trial court found that HCC's purported failure to comply was not in bad faith and it rendered the subpoena only "invalid, not illegal." *See Brewer*, 601 S.W.3d at 710 (stating bad faith is "intent to engage in conduct for an impermissible reason, willful noncompliance, or willful ignorance of the facts," including "conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose"). We have not found and the parties have not directed us to any legal authority stating Section 59.006 applies to "trial subpoenas" and there is no evidence that HCC's decision to issue a "trial subpoena" to Morgan Stanley for the brokerage account records was done in bad faith, as opposed to being done in reliance on HCC's interpretation of Rule 59.006 and the relevant discovery rules. Moreover, trial courts have significant discretion when ruling on requests for sanctions. We thus cannot say on the record before us that the trial court clearly abused its discretion by denying the motion for sanctions. *See generally HouseCanary, Inc.*, 622 S.W.3d at 259 (stating trial court does not abuse its discretion when decision based on conflicting evidence, at least some of which reasonably supports court's decision).

61

### 3.    Motion to Quash and Request for Protective Order

The trial court implicitly denied HVLP's motion to quash the Morgan Stanley subpoena and request for protective order when it granted in part HVLP's plea in abatement and motion for protection, granting the plea and abating the arbitration proceedings but denying all other relief.

"Motions for the protection of parties and witnesses are addressed to the sound discretion of the trial court." *Prestige Ford Co. Ltd. P'ship v. Gilmore*, 56 S.W.3d 73, 80 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).   A trial court's ruling on a motion to quash is also reviewed for abuse of discretion.  *See In re United Fire Lloyds*, 578 S.W.3d 572, 578 (Tex. App.—Tyler 2019, no pet.) (reviewing order granting motion to quash for abuse of discretion).

Appellees argue the trial court abused its discretion by refusing to quash the Morgan Stanley subpoena and issue a protective order because HCC failed to comply with Section 59.006 when it issued the subpoena.  *See In re Tex. Dow Employees Credit Union*, No. 13-24-00053-CV, 2024 WL 1301212, at *6 (Tex. App.—Corpus Christi–Edinburg Mar. 26, 2024, no pet.) (mem. op.) (holding trial court abused its discretion by denying motion for protection when "the provisions of the finance code were not followed"); *see also Calhoun v. Ying*, No. 01-05-00489-CV, 2006 WL 2076038, at *4 (Tex. App.—Houston [1st Dist.] July 27, 2006, no pet.) (mem. op.) ("Compliance with section 59.006 is a valid reason for granting a

protective order."). *In re Tex. Dow* and *Calhoun*, on which Appellees rely, are distinguishable because, unlike in those cases, Morgan Stanley voluntarily provided the requested documents to HCC before HVLP filed its motion to quash and motion for a protective order. Under these unique circumstances, we cannot say the trial court committed a clear abuse of discretion when it denied the motion to quash and request for a protective order. *See In re Prudential Ins. Co.*, 148 S.W.3d at 135–36.

Appellees are thus not entitled to a petition for writ of mandamus. We overrule Appellees' challenges to the trial court's denial of the motion for sanctions, motion to quash, and request for protective order.

## Conclusion

We reverse the trial court's order granting HVLP's plea in abatement based on waiver and remand to the trial court for further proceedings. We construe Appellees' cross-appeal as a petition for writ of mandamus because we do not have pendent jurisdiction over the cross-appeal, and we deny Appellees' petition for writ of mandamus.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.